IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 13-cv-02189-LTB-BNB

JAMES P. WYLIE,

Plaintiff,

v.

TONY CAROCHI, CDOC Interim Executive Director, and
JAMES FALK, SCF Warden,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the defendants' **Motion to Dismiss** [Doc. #20, filed 01/06/2014] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED.

**I. STANDARD OF REVIEW**

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

## II.  BACKGROUND

The plaintiff currently is incarcerated by the Colorado Department of Corrections ("DOC") at the Fremont Correctional Facility ("Fremont").  He filed his Amended Prisoner Complaint on October 7, 2013 [Doc. #9] (the "Complaint").  At all times pertinent to the allegations of the Complaint, the plaintiff was incarcerated at the Sterling Correctional Facility ("SCF" or "Sterling").

The Complaint alleges that "SCF" deprived the plaintiff of his Eighth Amendment and due process rights "by placing offenders on Hunger Strikes in Holding Cells; which in turn gives them no access to Tidlers/Bulletinboards, Gen./Law Library, T.V.'s, Day-Hall's Pass-Rec., ADA Talking books/Player, E-Razors, Phones, Nel-Clepersm, and etc."  While in the holding cell, he is not allowed access to grievances, the law library, legal papers, or the courts.  The lights in the holding cell are on 24 hours a day "knowing I've an eye disorder" and depriving the plaintiff of "sleep, Cell windows, news, Offender-to-Offender/public communication, and etc. . . . [and] only allowing me one shower in a week despite me asking multiple times"  The plaintiff has been "on multiple Hunger Strikes" at Sterling from December 2012 through July 2013.  The defendants are liable because they are responsible for Operational Memorandum 300-123.[1]  *Complaint*, pp. 3-6.

---

[1] The plaintiff states that he mistakenly referred to Operational Memorandum 300-103 in the Complaint; he meant to refer to Operational Memorandum 300-123.  *Reply to Motion to Dismiss* [Doc. #30] (the "Response"), p. 1.

The plaintiff seeks compensatory damages. He also requests that the DOC stop violating his rights.[2] Id. at p. 8.

### III.  ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A.  Official Capacity Claims: Eleventh Amendment Immunity

The defendants assert that they are entitled to Eleventh Amendment immunity. *Motion*, p. 3. Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted). The defendants' assertion of Eleventh Amendment immunity is a facial challenge to the Complaint's allegations. Therefore, I accept the allegations of the Complaint as true. Holt, 46 F.3d at 1003.

The Eleventh Amendment precludes federal jurisdiction over state officials acting in their official capacities[3] as to retroactive monetary relief, but not as to prospective injunctive relief.

---

[2] Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

[3] The plaintiff is suing DOC Interim Executive Director Carochi. The current DOC Executive Director is Rick Raemisch. Under Fed.R.Civ.P. 25(d), when a public official sued in an official capacity ceases to hold office while the action is pending, the officer's successor is

Pennhurst, 465 U.S. at 102-03,105-06.  Eleventh Amendment immunity applies to suits arising under 42 U.S.C. § 1983.  Quern v. Jordan, 440 U.S. 332, 345 (1979).

The plaintiff alleges that the defendants are employed by the DOC. *Complaint*, pp. 1-2. The DOC is an agency or subdivision of the State of Colorado.  Consequently, a suit against the defendants in their official capacities is a suit against the state.  Therefore, the Motion should be granted to the extent it seeks dismissal of all claims against defendants in their official capacities for retroactive monetary relief.

### B.   Claims for Declaratory and Injunctive Relief

The defendants assert that the plaintiff's claim for injunctive relief should is moot.[4] *Motion*, p. 13.  The Tenth Circuit Court of Appeals has stated:

> When a prisoner files suit against prison officials who work in the institution in which he is incarcerated, seeking declaratory and injunctive relief on the basis of alleged wrongful conduct by those officials, and then that prisoner is subsequently transferred to another prison or released from the prison system, courts are presented with a question of possible mootness.  Where the prisoner's claims for declaratory or injunctive relief relate solely to the conditions of confinement at the penal institution at which the prisoner is no longer incarcerated, courts have concluded that they are unable to provide the prisoner with effective relief.  Because a prisoner's transfer or release signals the end of the alleged deprivation of his constitutional rights, an entry of equitable relief in his favor would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendants' behavior towards him.

---

automatically substituted as a party.  Therefore, the claim against Carochi in his official capacity is asserted against the current DOC Executive Director.

[4]The defendants also assert that the plaintiff's claim for declaratory relief is moot. However, the plaintiff does not assert a claim for declaratory relief.

> However, where a prisoner brings a lawsuit challenging policies that apply in a generally uniform fashion throughout a prison system, courts have been disinclined to conclude that the prisoner's declaratory or injunctive claims are moot, even after he has been transferred to another prison in that system. Critically, in determining that the transferred prisoners' claims for declaratory or injunctive relief were not moot, these courts have focused upon the fact that the prisoners had sued defendants who were actually situated to effectuate any prospective relief that the courts might see fit to grant— viz., that the prisoners had sued the director of the prison system or the prison system itself. Conversely, these cases indicate that a transferred prisoner's challenge to system-wide prison policies is moot where he seeks equitable relief and only sues prison officials at the transferor institution—that is, the institution where he was formerly incarcerated.

Jordan v. Sosa, 654 F.3d 1012, 1027-29 (10th Cir. 2011) (internal quotations and citations omitted).

Operational Memorandum 300-123 is a policy regarding hunger strikes. It is specific to Sterling Correctional Facility. *Motion*, Ex. A-1.[5] The plaintiff is no longer incarcerated at Sterling. Therefore, any prospective injunctive relief the court may order against the defendants would have no effect on the defendants' behavior toward the plaintiff. The plaintiff's claim for injunctive relief against the defendants should be dismissed as moot, and the claims against the defendants in their official capacities should be dismissed entirely.

---

[5] The defendants have submitted a copy of Operational Memorandum 300-123. *Motion*, Ex. A-1. "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." GFF Corp. v. Associated Wholesale Grocers, 130 F.3d 1381, 1384-1385 (10th Cir. 1997). O.M. 300-123 is central to the plaintiff's claims, and its authenticity is not disputed.

## C. Individual Capacity Claims

### 1. Qualified Immunity

The defendants assert that they are entitled to qualified immunity. *Motion*, pp. 12-13. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I consider two factors. I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional right. In addition, I must inquire whether the right was clearly established at the time of the violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999).[6]

#### a. Eighth Amendment Claims

The defendants assert that the plaintiff fails to state a claim for violation of his Eighth Amendment rights. *Motion*, pp. 5-9. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment's prohibition against cruel and unusual

---

[6]The order in which I may consider these factors is discretionary. Pearson v. Callahan, 555 U.S.223, 236 (2009). However, both prongs must be satisfied. Herrera v. City of Albuquerque, 589 F.3d 1064, 1070 (10th Cir. 2009).

punishment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care and take "reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations omitted).

A prisoner claiming an Eighth Amendment violation must establish both objectively and subjectively that particular conditions of confinement constitute cruel and unusual punishment. Wilson v. Seiter, 501 U.S. 294, 297-298 (1991). To satisfy the objective component, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. To satisfy the subjective component, a plaintiff must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm. Farmer, 511 U.S. at 834. The subjective component of a deliberate indifference claim is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

The Complaint does not contain any factual allegations to show that either defendant knew of and disregarded an excessive risk to the plaintiff's health or safety. Therefore, the plaintiff has failed to meet the subjective component. The Motion should be granted insofar as it seeks dismissal of the plaintiff's Eighth Amendment claims.

### b.  Due Process Claims

The defendants argue that the plaintiff fails to state a claim for violation of his due process rights. *Motion*, pp. 9-12. The Fourteenth Amendment guarantees due process when a person may be deprived of life, liberty, or property. U.S. Const. amend. V. The Due Process

Clause "shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty interests.'" Harper v. Young, 64 F.3d 563, 564 (10th Cir. 1995), *aff'd*, 520 U.S. 143 (1997). Thus, before determining whether a plaintiff's procedural or substantive due process rights have been violated, the court must determine whether the plaintiff has a liberty interest.

"[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Nevertheless, the state or federal government "may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483 (1995).[7] A prisoner's liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, [] nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84.

The following considerations are relevant to the inquiry of what constitutes an atypical and significant hardship: (a) whether the conditions of the plaintiff's confinement relate to and further a legitimate penological interest such as safety or rehabilitation; (b) whether the conditions are extreme; (c) whether placement in the conditions increases the duration of the

---

[7]In Sandin, the Court eschewed the methodology it had previously applied to determine the existence of a liberty interest. The prior methodology required examination of prison regulations "to determine whether mandatory language and substantive predicates created an enforceable expectation that the State would produce a particular outcome with respect to the prisoner's conditions of confinement." 515 U.S. at 480-81. The Court instead returned to the due process principles that were established and applied in Meachum v. Fano, 427 U.S. 215 (1976), and Wolff v. McDonnell, 418 U.S. 539 (1974). Those principles focus on the nature of the deprivation instead of the language of a particular regulation. Sandin, 515 U.S. at 481.

plaintiff's confinement; and (d) whether placement in the conditions is indeterminate. Estate of Dimarco v. Wyo. Dept. of Corr. Div. of Prisons, 473 F.3d 1334, 1342 (10th Cir. 2007).

In Wilkinson, the Supreme Court found that a combination of factors rose to the level of atypical and significant hardship at Ohio's Supermax facility, the Ohio State Penitentiary ("OSP"):

> In OSP almost every aspect of an inmate's life is controlled and monitored. Inmates must remain in their cells, which measure 7 by 14 feet, for 23 hours per day. A light remains on in the cell at all times, though it is sometimes dimmed, and an inmate who attempts to shield the light to sleep is subject to further discipline. During the one hour per day that an inmate may leave his cell, access is limited to one of two indoor recreation cells.
>
> Incarceration at OSP is synonymous with extreme isolation. In contrast to any other Ohio prison, including any segregation unit, OSP cells have solid metal doors with metal strips along their sides and bottoms which prevent conversation or communication with other inmates. All meals are taken alone in the inmate's cell instead of in a common eating area. Opportunities for visitation are rare and in all events are conducted through glass walls. It is fair to say OSP inmates are deprived of almost any environmental or sensory stimuli and of almost all human contact.
>
> Aside from the severity of the conditions, placement at OSP is for an indefinite period of time, limited only by an inmate's sentence. For an inmate serving a life sentence, there is no indication how long he may be incarcerated at OSP once assigned there. Inmates otherwise eligible for parole lose their eligibility while incarcerated at OSP.

209 U.S. at 213-14 (internal quotations and citations omitted).

The Court found a liberty interest in avoiding placement at OSP:

> Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in Sandin, placement at OSP is indefinite and, after an initial 30-day review,

10

> is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context. It follows that respondents have a liberty interest in avoiding assignment to OSP.

Id. at 224 (internal quotations and citations omitted).

In Jordan v. Federal Bureau of Prisons, the Tenth Circuit applied the principles set forth in Wilkinson to an inmate's conditions of confinement at the United States Prison, Administrative Maximum in Florence, Colorado ("ADX"). The court determined that the plaintiff, who was held in administrative detention at ADX for five years while being investigated for a murder, did not suffer atypical and significant hardship. The undisputed material facts demonstrated that all inmates in administrative maximum confinement were provided access to "the commissary, institution programming, mental health and medical services, leisure and law libraries, five hours a week recreation, a hobby craft, telephone, correspondence, and visitors." Id. at 644, 648-50. In addition, they had "opportunities to gain employment as a unit orderly; access to legal assistance from another inmate; and to interact with a case manager, unit counselor, unit manager, custody staff, and department heads." Id. Although they are housed "in single cells and cannot move about as in an open population facility, they are offered the same programs and afforded the same privileges as inmates in the general population, except that administrative detention inmates: 1) are allowed only one social call per month, while general population inmates are allowed two per month; and 2) do not receive the twelve hours recreation time general population inmates on group recreation status receive, but receive the same five hours of individual recreation that general population inmates on single recreation status receive." Id.

The court recognized that Wilkinson was instructive, but was "not dispositive here, as the conditions of Mr. Jordan's administrative detention were obviously not as onerous, given 1) he admittedly had frequent contact with staff; 2) the length of his sentence was not affected by the administrative detention; and 3) his confinement was not indefinite but instead limited to the duration of the pending murder investigation." Id. at 652.

Guided by Wilkinson, Dimarco, and Jordan, I look to the Complaint's allegations to determine whether it is plausible that the conditions and restrictions of the plaintiff's confinement pursuant to Operational Memorandum 300-123 imposed an atypical and significant hardship on the plaintiff when compared to the normal incidents of prison life and thereby created an enforceable liberty interest in avoiding such conditions and restrictions.

Operational Memorandum 300-123 provides that an inmate involved in a hunger strike will be removed from the general population; may be placed in a holding cell at the direction of medical personnel; and "will be monitored per medical instruction." *Motion*, Ex. A-1, § IV-B. The purpose of Operational Memorandum 300-123 is to "provide counseling, appropriate health care, and monitoring to inmates indicating participation in a hunger strike." Id. at § I. Placement in a holding cell for monitoring during a hunger strike relates to and furthers the legitimate penological interest of the inmate's health and safety.

The plaintiff alleges that while in the holding cell, he is not allowed access to grievances, the law library, legal papers, or the courts. He does not, however, allege that he was unable to pursue an actual claim. He also alleges that the lights were left on for 24 hours a day "knowing I've an ADA eye disorder," but he does not describe his eye disorder nor does he allege any facts from which to infer that the eye disorder was aggravated by the lights or that he was not

permitted to cover his eyes. He alleges he was denied communication with other inmates and the public, but does not allege that he denied interaction with staff. Moreover, the plaintiff does not allege that the duration of his confinement was increased or that placement in the holding cell was indeterminate;.

The plaintiff alleges that he was deprived of sleep, windows, and news. However, the plaintiff's confinement to a holding cell was limited to the duration of each of his "multiple Hunger Strikes" during an eight month period from December 2012 through July 2013. The Supreme Court has "found no liberty interest in protecting against a 30-day assignment to segregated confinement because it did not present a dramatic departure from the basic conditions of the inmate's sentence." Wilkinson, 545 U.S. at 223 (internal quotations omitted) (citing Sandin, 515 U.S. at 485). The Court noted that "inmates in the general population experienced significant amounts of lockdown time and that the degree of confinement in disciplinary segregation was not excessive." Id. (internal quotations omitted) (citing Sandin, 515 U.S. at 486). The Court did not find "the short duration of segregation to work a major disruption in the inmate's environment." Id. (citing Sandin, 515 U.S. at 486). See also Templeman v. Gunter, 16 F.3d 367, 369 (10th Cir.1994) (inmates are not constitutionally entitled to a particular classification or degree of liberty while incarcerated, and generally placement in administrative segregation does not deprive an inmate of liberty).

The conditions faced by the plaintiff in the holding cell were no more burdensome than conditions faced by other inmates in cases where courts have ruled that there was no due process violation. Dimarco, 473 F.3d at 1343 (stating that although the plaintiff's conditions of protective confinement were "admittedly spartan," they were not atypical because she had access

13

to the basic essentials of life, and she was not entitled to "every type of program available to other inmates, ranging from work to recreation"); <u>Jordan v. Federal Bureau of Prisons</u>, 191 Fed.Appx. 639 (finding no liberty interest in conditions imposed during five-year administrative segregation confinement at ADX); <u>Georgacarakos v. Wiley</u>, Civil Action No. 07-cv-01712-MSK-MEH, 2010 WL 1291833, at *11-13 (D. Colo. March 30, 2010) (finding no liberty interest in conditions imposed in the ADX General Population); <u>Rezaq v. Nalley</u>, ___ F.3d ____, App. Case Nos. 11-069 and 11-1072, 2012 WL 1372151 (10th Cir. April 20, 2012) (no liberty interest in avoiding transfer without due process to ADX; extreme conditions in administrative segregation do not, on their own, constitute an atypical and significant hardship).

The plaintiff's confinement in a holding cell does not violate any liberty interest which arises directly from the due process clause, and the plaintiff has failed to allege facts which demonstrate, or from which it can be inferred, that any such interest has been created by the state. Accordingly, the plaintiff has failed to show a constitutionally cognizable liberty interest violated by his placement in a holding cell pursuant to Operational Memorandum 300-123. The plaintiff's due process claims should be dismissed.

### c. Compensatory Damages Under the Prison Litigation Reform Act

The defendants assert that the plaintiff's claim for compensatory damages is barred by the Prison Litigation Reform Act ("PLRA"). *Motion*, p. 5. The PLRA provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).

Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted. Searles v. Van Bebber, 251 F.3d 869, 876 (10th Cir 2001) (applying section 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion). Although section 1997e(e) bars recovery of compensatory damages for failure to allege physical injury, it does not bar recovery of punitive damages or declaratory or injunctive relief. Id., at 881; Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 808 (10th Cir. 1999).

The Complaint does not contain any allegations of physical injury resulting from the actions or inactions of the defendants. The Motion should be granted insofar as it seeks dismissal of the plaintiff's request for compensatory damages.

## IV. CONCLUSION

For all of these reasons, I respectfully RECOMMEND that the defendants Motion to Dismiss [Doc. #20] be GRANTED.[8]

---

[8] Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated May 13, 2014.

                                      BY THE COURT:

                                      _s/ Boyd N. Boland_
                                      United States Magistrate Judge